UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOSS2, INC.,

    Plaintiff,

v.                                                                   CASE NO. 8:19-cv-462-T-23JSS

UNITED STATES ARMY CORPS OF
ENGINEERS,

    Defendant.
_____/

## **ORDER**

Alleging that the U.S. Army Corps of Engineers failed to consider a dredging project's effect on red tide, SOSS2 sues (Doc. 1) for a declaration that the Corps's "finding of no significant impact" violates the Administrative Procedure Act (APA), the National Environmental Protection Act (NEPA), and other federal environmental law. SOSS2 moves (Doc. 23 at 3) to supplement the administrative record with extra-record evidence about red tide. The Corps opposes (Doc. 30) supplementation. Also, the Lido Key Resident's Association moves (Doc. 20) to intervene as a defendant. SOSS2 opposes (Doc. 28) intervention.

## **BACKGROUND**

Under NEPA, a federal agency prepares an environmental assessment to determine whether a proposed "major action" will have a "significant impact" on the environment. *Sierra Club v. U.S. Army Corps. of Eng'rs*, 295 F.3d 1209, 1215 (11th Cir.

2002) (citing 40 C.F.R. § 1501.3).  If the environmental assessment demonstrates that the proposed action will not have a significant impact on the environment, the agency issues a "finding of no significant impact," which incorporates the environmental assessment.  *Sierra Club*, 295 F.3d at 1215 (citing 40 C.F.R. § 1508.13).  If the agency issues a finding of no significant impact, the agency need not prepare an Environmental Impact Study (EIS), a report that requires a "full and fair discussion of significant environmental impacts."  *Sierra Club*, 295 F.3d at 1215 (citing 42 U.S.C. § 4332(2)(C)).

In June 2018, the Corps and the City of Sarasota issued a joint coastal permit authorizing the "Hurricane and Storm Damage Reduction Project in Lido Key, Sarasota County, Florida."  (Doc. 19)  The project authorizes periodic beach nourishment and construction of a "groin system" on Lido Key beach.  (Doc. 1 at ¶ 3)  The Corps plans to construct the groin system by dredging and "borrowing" sand from a shoal in Big Sarasota Pass — a natural inlet between Siesta Key and Lido Key that serves as the primary connection between the City of Sarasota and the Gulf of Mexico.  (Doc. 1 at ¶ 3)  The "borrow area" overlaps with the Sarasota Bay Estuary system, which the Florida Department of Environmental Protection (FDEP) designates as an "Outstanding Florida Water" — a water worthy of special protection. (Doc. 1 at ¶ 4)  In August 2018, the Corps issued an environmental assessment finding that the project would have "no significant impact on the environment."  (Doc. 1 at ¶ 1)  Accordingly, the Corps prepared no EIS.

According to SOSS2, a "red-tide outbreak" occurred in 2018 and devastated Sarasota Bay's marine ecosystem and tourism economy. (Doc. 1 at ¶¶ 5–6) SOSS2 claims that the environmental assessment's failure to consider the project's effect on red tide violates NEPA's requirement to "take a hard look" at each environmental consequence of a project. Also, SOSS2 alleges that the failure to consider red tide violates the APA, the Clean Water Act, and the Endangered Species Act.[1]

### AUGMENTING THE ADMINISTRATIVE RECORD

In May 9, 2019, the Army Corps of Engineers lodged (Doc. 19) the administrative record. SOSS2 moves (Doc. 23) to "supplement and/or augment" the administrative record (1) with unspecified transcripts — in an unspecified quantity — and exhibits from a state agency hearing and (2) with "any and all" documents — again in an unspecified quantity — about red tide.[2] (Doc. 23 at 3)

Section 706 of the APA, 5 U.S.C. § 706, requires a district court to review the administrative record. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("The focal point for judicial review of an administrative agency's action should be the administrative record."). Because an agency presumably knows the content of the record the agency

---

[1] Additionally, SOSS2 alleges that the environmental assessment fails to consider the project's effect on "existing flood plain information," on the residents of nearby Siesta Key, on erosion "downdrift" from the project, on seagrass habitat, and on "wave action" in Big Sarasota Pass. (Doc. 1 at ¶¶ 55, 95)

[2] Also, SOSS2 requests to supplement the administrative record with a 1984 EIS on which the Corps relied to issue the environmental assessment. (Doc. 23 at 3) However, the Corps later supplemented (Doc. 29) the administrative record with the 1984 environmental impact statement, which the Corps "inadvertently omitted" (Doc. 30 at 1).

considered, an agency's certification of the completeness of the administrative record receives a measure of presumed correction. *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).  The Eleventh Circuit permits a reviewing court to "go beyond" the administrative record only if "(1) an agency's failure to explain its actions effectively frustrates judicial review; (2) it appears the agency relied on materials or information not included in the administrative record; (3) technical terms or complex subjects need to be explained; or (4) there is a strong showing of agency bad faith or improper behavior." *Cobb's History*, 87 F.3d at 1247 n.1 (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988)); *Miccosukee Tribe of Indians v. United States*, 396 F. Supp. 2d 1327, 1330 (S.D. Fla. 2005) (Moore, J.).

SOSS2 requests both to "supplement" the administrative record and to admit "extra-record evidence" but employs these distinct terms interchangeably. To supplement the administrative record means to permit review of material that the agency considered but failed to include. *Pacific Shores Subdivision, California Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).  To admit extra-record evidence means to permit review of material that the agency was not offered to consider. *Pacific Shores*, 448 F. Supp. 2d at 5.  A party moving to admit extra-record evidence must show either that the agency's ineffective explanation of an action frustrates judicial review or that technical or complex terms require

recourse to an extra-record explanation. *Georgia River Network v. U.S. Army Corps of Eng'rs*, No. 4:10-cv-267, 2011 WL 2551044, at *3 (S.D. Ga. June 27, 2011) (Edenfield, J.) (citing *Cobb's History*, 87 F.3d at 1247 n.1)).

*Administrative Exhibits and Transcripts*

SOSS2 moves to supplement the administrative record with "[t]ranscripts and exhibits from the Florida Division of Administrative Hearings Case No. 17-1449." (Doc. 23 at 3) SOSS2 fails (1) to describe the administrative hearing, (2) to explain the content of the transcripts and the exhibits, and (3) to show why the administrative record remains incomplete absent inclusion of the transcripts and exhibits. Accordingly, SOSS2 fails to demonstrate that the transcripts and exhibits fall within an exception under *Cobb's History*.[3]

*"Any and all documents about . . . red tide"*

SOSS2 requests admission of extra-record evidence comprising "[a]ny and all documents related to the ecological and economic impacts of the 2018 red-tide outbreak in Sarasota County, Florida." (Doc. 23 at 3) SOSS2 alleges that the environmental assessment both "fails to include any mention of [] red tide and how this Project will interface ecologically with the compromised marine environment"

---

[3] In the response, the Corps explains that the administrative hearing considered a challenge to the Florida Department of Environmental Protection's (FDEP) issuing the joint costal permit. (Doc. 30 at 7–8) The Corps explains that an administrative law judge recommended modifying the permit to prohibit dredging that might harm the spotted seatrout and that the transcripts and exhibits comprise part of the record of that administrative hearing. (Doc. 30 at 7-8) The Corps notes that the administrative record contains both the administrative law judge's final order and the modified joint coastal permit and argues that the admission of transcripts and exhibits would unnecessarily swell the present 25,000-page administrative record. (Doc. 30 at 8)

- 5 -

and fails to mention "the disruptive impacts of the Projects to the local economy that is already suffering unprecedented economic losses in the wake of the red tide outbreak." (Doc. 23 at 6, 7) SOSS2 asserts that limiting this action to the administrative record, which reportedly contains no evidence about red tide, "frustrate[s] judicial review" of SOSS2's claim that the Corps's decision not to prepare an EIS is arbitrary and capricious.

Under 42 U.S.C. § 4332(2)(C), a federal agency must prepare an EIS only if the agency proposes a "major federal action" that "significantly affects the quality of the human environment." *Hill v. Boy*, 144 F.3d 1446, 1450 (11th Cir. 1998). The agency must take a "hard look" at the consequences of the proposed action. *North Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1541 (11th Cir. 1990). An agency satisfies the "hard look" requirement by "examin[ing] the relevant data and articulat[ing] a satisfactory explanation for [the] action." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A district court will vacate as "arbitrary and capricious" an agency's decision under "hard look" review if the agency "failed entirely to consider an important aspect of the problem." *Sierra Club*, 295 F.3d at 1216 (citing *Motor Vehicle Mfrs.*, 463 U.S. at 43–44).

Because NEPA requires an agency to consider each adverse consequence of an agency action, other circuits have described NEPA as an "inherent[] challenge to the adequacy of the administrative record." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 201 (4th Cir. 2009) (citing *Cnty. of Suffolk v. Sec'y of the Interior*, 562 F.2d

1368, 1384 (2d Cir. 1977)). Accordingly, other circuits "generally have been willing to look outside the record when assessing the . . . determination that no EIS is necessary," *Webb v. Gorsuch*, 699 F.2d 157, 159 n.2 (4th Cir. 1983), but these circuits limit review to ensuring "that no arguably significant consequences have been ignored," *Taxpayers of Mich. Against Casinos v. Norton*, 433 F.3d 852, 860 (D.C. Cir. 2006).

Although the Eleventh Circuit has not recognized a general exception permitting extra-record evidence in NEPA actions, *Miccosukee*, 396 F. Supp. 2d at 1333, the Eleventh Circuit permits review of extra-record evidence if the "agency's failure to explain its actions effectively frustrates judicial review." *Cobb's History*, 87 F.3d at 1247 n.1. *Miccosukee* explains that extra-record evidence in a NEPA action avoids the frustration of judicial review "only when the administrative record is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed action." *Miccosukee*, 396 F. Supp. 2d at 1333; *Georgia River Network*, 2011 WL 2551044 at *3 (recognizing that *Miccosukee* "restate[s] the Eleventh Circuit's exception for supplementation where an 'agency's failure to explain its action effectively frustrates judicial review.'")

SOSS2 argues that, because the administrative record contains no evidence about red tide, a prohibition of extra-record evidence about red tide would frustrate judicial review of whether the Corps failed to consider an environmental

consequence of the project. (Doc. 23 at 5) Essentially, SOSS2 contends that the existence of red tide in Sarasota Bay and the occurrence of the dredging project in Sarasota Bay compels the Corps to analyze the project's effect on red tide. But SOSS2 alleges no causal relation — or even evidence of a causal relation — between the dredging project and the frequency or severity of red tide. In other words, SOSS2 identifies the existence of a harmful phenomenon (red tide) but offers neither evidence nor argument purporting to show that an "environmental consequence" of the proposed action is an increase in the frequency or severity of that phenomenon. A party "seeking to supplement the administrative record must meet a heavy burden to show that supplementation is necessary," *Altamaha Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 2007 WL 1830864, at *4 (S.D. Ga. June 21, 2007) (Bowen, J.) (quotations omitted), but SOSS2's argument remains speculative and conclusory. SOSS2 fails to demonstrate that inclusion of evidence about red tide is necessary for SOSS2 to advance an informed argument that the Corps's omitting an analysis of red tide constitutes an arbitrary and capricious decision.

Also, SOSS2 fails to identify the evidence that SOSS2 seeks to include in the administrative record and instead requests admission of "any and all documents related to the ecological and economic impacts of the 2018 red-tide outbreak in Sarasota County, Florida." (Doc. 23 at 3) This boundless and indefinite request for a license to submit "any and all documents" is facially deniable.

Accordingly, the motion (Doc. 23) to supplement the administrative record is **DENIED**. If renewing the motion, SOSS2 (1) must identify in reasonable detail the

evidence about red tide that SOSS2 seeks to include in the administrative record and (2) must explain why inclusion of the evidence is necessary for SOSS2 to advance an informed argument that the Corps's omitting an analysis of red tide constitutes an arbitrary and capricious decision.

**INTERVENTION**

The Lido Key Residents Association moves (Doc. 20) under Rule 24(a), Federal Rules of Civil Procedure, to intervene as a defendant. About 950 commercial entities, property owners, and residents of Lido Key comprise the Association. (Doc. 20 at ¶ 5) About 650 of the Association's members own beachfront property on Lido Key, and many members either reside adjacent to the beach or possess an easement that provides access to the beach. (Doc. 20 at ¶ 8) The members often use Lido Key beach for "commercial pursuits" and for recreation. (Doc. 20 at ¶ 6)

The Association alleges that Lido Key beach has suffered "severe erosion" and that "there is virtually no remaining sandy beach to absorb and dissipate wave and storm energy." (Doc. 20 at ¶ 14) The Corps's project, which nourishes Lido Key beach by borrowing 1.3 million cubic yards of sand from Big Sarasota Pass and by constructing a groin system at the southern end of Lido Key beach, will allegedly prevent the "catastrophic effects" of continued erosion, "improve the navigability" near Lido Key, "replace and expand" the coastal barrier, protect wildlife, and promote the longevity of Lido Key beach. (Doc. 20 at ¶¶ 4, 15, 16)

Under Rule 24(a)(2), Federal Rules of Civil Procedure, a party may intervene as a matter of right if "(1) the application to intervene is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the applicant's interest will not be represented adequately by the existing parties to the suit." *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007).

The Association claims a legally protectable interest because the project will restore Lido Key beach and prevent storm damage and flooding on the "upland structures" of Lido Key. (Doc. 20 at ¶¶ 13–16) SOSS2 responds that the Association's alleged interest constitutes an "interest[] in the results of the project" — not "a real property interest in the project area." (Doc. 28 at ¶ 3)

A party intervening as a matter of right must have an "interest in the subject matter of the litigation [that] is direct, substantial, and legally protectable." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002). A "legally protectable interest is something more than an economic interest" — the interest must "be one which *substantive* law recognizes as belonging to or being owned by the [intervenor]." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (emphasis in original).

A review of leading Eleventh Circuit decisions confirms that the Association has failed to identify a legally protectable interest in the project. In *United States v.*

*South Florida Water Management District* 922 F.2d 704, 710 (11th Cir. 1991), the United States claimed that the method by which the South Florida Water District dispensed water increased pollution, and agricultural organizations that depended on the Water District to provide irrigation moved to intervene. *South Florida Water Management* holds that the agricultural organizations could not intervene as a matter of right because the agricultural organizations "asserted *no* property or other legal right in the Water District's services directly." *South Fla. Water Mgmt.*, 922 F.2d at 711 (emphasis in original). Because the agricultural organizations asserted "no legal right in the Water District's services" and asserted no "right to participate in the state's decision on the permit requirements that apply to the Water District," the organizations could not intervene — "however much [the organizations'] economic interest may depend on [the Water District's] services." *South Fla. Water Mgmt.*, 922 F.2d at 710.

Conversely, in *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d at 1251, Georgia sued to compel the Corps to increase the supply of water from the Apalachicola-Chattahoochee-Flint basin to the City of Atlanta, Georgia. Moving to intervene, Florida claimed that Georgia's prevailing in the action would limit the supply of water from the basin to Florida. *Georgia v. U.S. Army Corps of Engineers* holds that Florida could intervene as a matter of right because the law endows a state with the right to "an equitable apportionment" of water from an interstate stream and

because Georgia's prevailing in the action would hinder Florida's ability to obtain an equitable apportionment of water. *Georgia*, 302 F.3d at 1252.

Like the agricultural organizations in *South Florida Water Management* and unlike Florida in *Georgia v. U.S. Army Corps of Engineers*, the Association has identified no law — common or statutory — that endows the Association with a legally protectable interest in the Corps's project. That is, the Association asserts no legally protectable interest in the nourishment of the beach or to the construction of the groin field. Although the members of the Association possess a legally protectable interest in the "upland structures" on Lido Key and although the structures might benefit from the project, the "proximity to a . . . project" that would economically benefit the intervenor does not support intervention as a matter of right. *Karst Envt'l Educ. and Prot., Inc. v. Federal Highway Admin.*, No. 1:10-cv-154, 2011 WL 1434608, at *7 (W.D. Ky. Apr. 14, 2011). The Association asserts environmental and economic interests affected by the project but fails to show the existence of a direct, substantial, and legally protectable interest in the project. The Association fails to demonstrate entitlement to intervention as a matter of right and does not request permissive intervention. The motion (Doc. 20) to intervene is **DENIED**.

ORDERED in Tampa, Florida, on August 9, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE